Ms. Odom, good afternoon. Good afternoon. May it please the court, counsel, my name is Ginger Odom from the Office of the State Appellate Defender. On behalf of Appellant Ernest Garza, we raised four issues in the briefs. The state has conceded the fines and fees issues in Argument 4, so I will focus on Arguments 1, 3, and 2 as they appear in the briefs. The trial court erred by failing to exercise its discretion by refusing Mr. Garza's repeated requests to be evaluated in the Veterans and Service Members Court program. Garza filled out an application requesting Veterans Court and the trial court refused the request. The trial court's conclusion that Veterans Court was not a viable alternative because of the nature of the offense was error. The state concedes that aggravated child pornography is not a disqualifying offense for the program. The state claims that the court's refusal was based on Garza's prior conviction for aggravated battery. This claim finds no support in the record. The court's very words were, show that nature of the offense does not fall within the guidelines of Veterans Court. The state posits that the court did not mean what the court said, but something else altogether, Mr. Garza's prior conviction. The phrase, nature of the offense, however, seems aimed at the aggravated, at the charged conduct, which does not qualify him from participation in the program. However, even if this court agrees with the state's interpretation of the court's words, that he was referring to Mr. Garza's prior conviction, the court was still wrong. Because aggravated battery is not a disqualifying offense. Only aggravated battery that is accompanied by great bodily harm or permanent disability is a disqualifying offense. And here, the trial court made no inquiry into the aggravated battery offense and thus had no data necessary to make the decision that Mr. Garza was disqualified. He was convicted of a crime of violence in the past ten years, including but not So, isn't the crime of violence include the aggravated battery, even though there was no finding of great bodily harm or personal injury? Isn't that... Well, the statute says that it was aggravated battery accompanied by great bodily harm or permanent disability. And the only information that the trial court had at the time that the court found that Mr. Garza was disqualified was that he had a prior conviction for aggravated battery. And the court did not know whether or not that aggravated battery was accompanied by great bodily harm. But the statute also includes the crime of violence language in the past ten years that doesn't have the requirement for the great bodily harm part. Or you're saying no? Well, I'm saying that if the statute lists something, then it necessarily excludes those items that are not on the list. The statute, I guess what I'm saying is that, had the intention been to include straight aggravated battery, then that would have been included in the list. So, they say included, but not limited to? Certainly. The list of offenses. I mean, to me, I guess that means that even though the list of offenses are included, other kinds of violence would be included as well. But you're saying no? Well, I'm saying that I think that there should be some evaluation about the crime made, because the statute lists aggravated battery and defines aggravated battery that is disqualified as that aggravated battery that is accompanied by great bodily harm or permanent disability. In any event, Mr. Garza was eligible for the program otherwise. He served in the United States Marines for ten years, he was honorably discharged, and the record strongly indicates that he would be willing to participate in the program. He specifically asked for transfer into the program both before and after trial, and he acknowledged in allocution that a determination had been made that he suffered from a mental disorder. Whether or not he would be a good candidate could only be determined after an evaluation, which the trial court refused based on its error. The trial court's refusal to evaluate was based on his misapprehension of law and was erroneous. Therefore, this court should remand the matter for proper consideration of Mr. Garza's request to be evaluated. Next, Mr. Garza's four convictions should merge into a single offense. In People v. McSwain, the 4th District analyzed the child pornography statute to determine the allowable unit of prosecution. The McSwain court found that the use of the word any in the statute made the child pornography statute ambiguous, and in doing so relied on the reasoning of the Illinois Supreme Court in Carter, who evaluated identical language in the UUW by Fallon statute, which stated, at that time, it is unlawful for a person to knowingly possess any firearm or firearm ammunition. The Carter court relied on a dictionary and concluded that the word any has categorical meanings, meaning any one of a kind, any kind, or any was ambiguous as to the unit of prosecution. The court therefore determined that the rule of lenity applied and construed the UUW statute in favor of the defendant. Likewise, the statute here, in pertinent part, prohibits a person from possessing, with knowledge, any film, videotape, photograph, or other similar visual reproduction or depiction by computer of any child who the person knows or reasonably should know to be under the This statute, like I said, has identical language to the language that the Carter court determined was ambiguous. The statute, therefore, here is also ambiguous as to the unit of prosecution and must be construed in favor of Mr. Garza. The state argues that McSwain was wrongly decided and urges this court to follow Murphy instead. The state says that the court in McSwain failed to consider how the focus of the child pornography statute differed from the UUW by felon statute at issue in Carter. While it is true that the focus of the statutes differ, the principles of statutory construction and interpretation apply irrespective of the focus of the statutes being analyzed. Both statutes deal with possession of contraband. The contraband is different, but that distinction alone is meaningless. The state offers no good argument as to why the concepts of statutory construction as outlined in Carter were not correctly applied in McSwain. As the Illinois Supreme Court in Carter held, it is for the legislature to define what it desires to make the allowable unit of prosecution. And the legislature has done just that for this statute. It has amended the aggravated child pornography statute to allow for separate convictions. As amended, the statute now reads, the possession of each film, videotape, photograph, or other similar visual reproduction or depiction constitutes a single and separate offense. The amendment demonstrates the legislature's recognition that the plain language of the prior statute was ambiguous. The legislature knows how to allow for separate convictions and did so both in the Carter amendment and in this now amendment to the statute at issue. However, that amendment would have been superfluous if the Murphy interpretation of the statute was correct and the McSwain interpretation was incorrect. Furthermore, the amendment took place in January of 2014, well after Mr. Garza was arrested, tried, and sentenced in this case. This court should follow the decision in McSwain and vacate the extraneous counts for which Mr. Garza stands convicted and remand his cause for issuance of a corrected sentencing order. Mr. Garza's case should also be remanded for appointment of post-trial counsel or for preliminary crankle inquiry. During a pre-sentencing sex offender evaluation, Mr. Garza told the evaluator he was not allowed to present favorable evidence in his behalf at trial because the trial court refused his request for funds to conduct a search for the women depicted in the images. The trial court addressed defense attorney Villasenor about Garza's complaint, asking whether or not he had ever even submitted a request for investigation funds. Mr. Villasenor admitted that he did not file a motion requesting funds to conduct a search. The trial court then assured Mr. Garza that it was not the court who denied him access to his defense witnesses. Then thereafter, Mr. Garza spoke in allocution and complained that crucial evidence rebutting the state's theory was not presented at his trial. His claims were not bald allegations concerning unspecified evidence, but were specific factual allegations about who was to be called and what they would say. For example, his counsel did not call Garza's fiancee to testify about the ages of the women depicted in the images or the practices employed in the workplaces where the images originated to verify that the women were adults. And his lawyer did not fail to call in a medical expert to testify about the Tanner scale and the appearances of the women in the images. The state, in its brief, argues that no expert was necessary because the trier of fact can rely on his or her own judgment about the apparent age of the child. However, this is precisely the point. Garza's defense was that despite their youthful appearance, the women in the images were actually of legal age. Therefore, a medical expert was necessary to inform and influence the court's age determinations. This is particularly so where the defense presented no evidence at all, and the state offered only the non-expert opinion testimony of the arresting officers. Mr. Garza also said in allocution that no search to locate the women in the images was mounted, and that his lawyer did not seek out the sites where the images originated to establish the ages of the subjects. And no request for funds to conduct such an investigation had been made. Now, this claim that counsel did not conduct a search was not only not conclusory or bald, but it was actually affirmed by the trial court itself. And this exchange between the trial court and Attorney Villasenor should have alerted the court of possible neglect of Mr. Garza's case. The state argues that counsel's choices to not present any evidence at all were strategic, but this court in Cabrera recognized that an attorney's failure to call a strategic decision was not sufficient to trigger the court's duty to inquire. Here, Mr. Garza's claims, plus the attorney's admission that he did not conduct the investigation, were sufficient to trigger the court's duty to inquire. Therefore, this court should remand to the trial court for appointment of post-trial counsel, or at the minimum, with directions for the court to conduct a proper crankle inquiry. For these reasons and those argued in the briefs, we respectfully ask that this court remand the matter for proper consideration of Mr. Garza's request to be transferred to Veterans Court, to vacate the extraneous accounts, and or to remand for appointment of post-trial counsel or proper crankle inquiry. Thank you. Thank you, Ms. Odom. Ms. Kelly, good afternoon. Good afternoon. May it please the Court. Counsel. To go in reverse order and address the last issue addressed by Ms. Odom, the people would note that the defendant did not file a pro se post-trial motion. The defendant embarked on an EPIC statement of allocution that went on for some 50 pages in the record. In fact, the judge had to even call a lunch break during the statement of allocution after an hour, and then it went on after that. The issue that counsel has raised... EPIC? I'm sorry? Did you describe it? I described this EPIC because I've, you know, in 30-some years of doing this, never seen one that went on that long. It's 50 pages in the record. You're saying you're talking about the quality of it? I don't know. All we have is a cold record. But it was EPIC in terms of size, is what I meant. A pro se defendant doesn't actually have to file a written motion, does he? Oh, no, no. I'm saying he did not file one. He didn't... There's no pro se written motion in this case, or even oral motion. What we have here is the statement of allocution, which was preceded by the judge's question to defense counsel. The case had been set for sentencing, and at the first sentencing hearing, defense counsel asked to have his client undergo a sex offender evaluation. That was allowed. Evaluation occurred. The case was continued a number of times. When it finally came up for sentencing, neither side had any evidence in aggravation and mitigation, and I believe right before arguments, counsel said, well, Mr. Defense counsel... Excuse me, the trial judge said to the defense counsel, I have a question on something that Mr. Garza stated in the evaluation, which was that the trial judge wouldn't allow funds for me to find these people in the Philippines. And so he said, she asked the defense counsel, did you ask for funds? And then I turned it down, and he said, no, I did not make that request. Now, he did not ask for funds, and that was the entirety of that discussion, and then he went into the statement of allocution. And now, on appeal, he raises the fact that that was really, in essence, a complaint to the court, pro se, of ineffective assistance of counsel, and that issue be remanded for a crankle hearing. In this case, the people were dressed on their brief for the law involved, but what the defendant is now asking... The record shows that counsel had many meetings with the defendant with regard to discovery issues, and the court was asking about it, yes, we're still discussing discovery. And apparently, he and the client did discuss the client's idea of tracking down these people in the Philippines and bringing his fiance over from the Philippines, who, of course, could not have testified to the ages of the people in the picture. How about a medical expert? There was no need for a medical expert. That's not the state's position, but I would invite the court... How do you determine someone's age? It's difficult, and it's up to the tryer of fact. And in this case, the photographs, as unpleasant as it is, are included in the record. This defendant was charged with aggravated child pornography, which is children under the age of 13. And unfortunately, if you have the unfortunate task of looking at the pictures, I don't think there will be a problem in determining that these pre-pubescent girls are under the age of 13. This is not a question where somebody might be 16 or 17 or 17 or 18. The charge here was that these girls depicted in the photos are under the age of 13. The photos are available in the court record. The trial judge looked at the photos. It's up to the trier of fact to determine the age of these children. And the idea that counsel, and counsel apparently considered it, but as a matter of strategy, decided not to try to track down who these children were in the Philippines, it's an impossible task. The tasks in which lawyers are found to be ineffective or show neglect of case by not tracking down witnesses, oftentimes the defendant is aware of who the witnesses are or able to confine it to some geographic area like the United States. In this case, I think the request was something that was never a reasonable request. Does defense counsel, did he say, I contacted, I had these reviewed by a physician? I mean, you know, me saying, I looked at a picture and there was no way that that child is, you know, post-pubescent and this person depicted, you know, is it, I mean, should a medical expert at least have been called in to review them to say, of course, you know, a lay person can tell, or is it something, is there a possibility that a medical expert would be able to make a determination that a lay person could not? I don't think medical, I don't think expert testimony is necessary in this case, in this type of a case. I'm not aware of any case that requires either side to bring in an expert to determine the age of the children in the case. As I said, this is not a case of child birth under the age of 18 or 17. This is under the age of 13, which is a little easier to determine than a teenager, and I don't think there's any obligation on counsel in this case to bring an expert in to testify to the age of 13. Well, I don't mean to bring an expert in to testify, but to even investigate his claim. I'm not aware of any obligation on him to do so. I'm not aware of whether he did it or not. Possibly he consulted an expert who said, these children are clearly under the age of 18. I'm not aware of any case, as a matter of strategy, he's not going to call the expert. How could the trial court know that, just in the inquiry that was conducted? Not from this inquiry, she couldn't. However, she had seen the pictures. She's aware of the facts of the case, and also aware that there have been several continuances while discovery was being done and while the defense counsel was working on the case. With regard to... I'm sorry, this raises an interesting question, and I have not seen the pictures. So, you know, you said there might be issues of a year here and a year there. Why wouldn't there be that same issue of a 12-year-old or a 15-year-old or an 11-year-old? The picture's going to tell me the answer to that question. There's two set points in Illinois. Aggravated child pornography is child under the age of 13, and then I believe child pornography is under the age of 17. Now, it could be that the judge could have looked at these pictures and said, you know, I don't think that aggravated child pornography has been proved. I think this could be a teenager. It could be somebody 13 or 14. Therefore, I'm going to find you guilty of the lesser offense of child pornography. Didn't happen in this case. So, as I said, this is a case, I think, where there'd be less need for your concern about an expert because the age is so young, and these children are clearly prepubescent. You're saying from the pictures themselves? Yes. That's the people's position, yes. With regard to the issue about whether any of the defendant's convictions should be vacated under the One Act, One Crime case, the people would submit that the amendment to the statute by the legislature was a clarification of what they always thought the law was. I believe the amendment of an unambiguous statute indicates a purpose to change the law, while no such purpose is indicated by the mere fact of an amendment of an ambiguous provision. Everyone agrees that the use of the term any was ambiguous, and the legislature clarified what it meant in the unlawful possession of a weapons charge, and then after McSwain came out in 2012, in which case, again, the possession of each photograph was a separate and single offense, and therefore all four of his convictions and sentences should stand. Any other questions? Oh, there was, with regard to, yeah, the first issue with regard to Veterans Court, the people would stand on their feet. Not meaning to rush you. Well, no. Last case of the day. Thank you. Thank you. Ms. Oden, rebuttal. Just two points. One, as to the aggravating factor, as counsel said, and your honor brought up, that there is a difference between aggravated child porn and regular child pornography. And I agree that this is, either of those are terrible crimes and they're horrific, but nonetheless, the lawyer does have an obligation to present a zealous defense in not conducting an investigation and not calling in an expert witness who would, or not even maybe, there's no indication that the lawyer even contacted a witness to determine whether or not it could be said what the ages of the women in the pictures were. There's no, I mean, there, and it wasn't just the women that were from the Philippines. There were some women that may or may not have been from the Philippines in these pictures. And also, Mr. Garza said in the videotape that one of the pictures came from a swingers' site. And so it would have been of very little expense for the lawyer to do a search of that swingers' site or to present evidence that the swingers' site contained a disclaimer at the beginning that all of the players in the photographs were of legal age. My point is that when... It's very hard on the internet here, even if there was a disclaimer. That's true, but there is a defense. The child pornography statute includes a defense that if the person who is charged with a crime, it's an affirmative defense that if the person is charged with a crime and prior to being charged with a crime they had made some bona fide effort to ascertain the ages of the people depicted in the pictures, and that would go at least some way to presenting an effort to ascertain the ages of the players. That if he had gone to a website or had only been searching websites that contained a disclaimer, he goes to the opening of the website and it contains a disclaimer and then he enters into the website to look at these pictures of people that are apparently youthful, that are apparently quite young, but they're not in fact young if he can rely on the disclaimer. I mean, that would be a point that the state would be able to argue at trial, that that was not a sufficient effort, that was not a bona fide effort. But nonetheless, the trial lawyer did not present any evidence at all. Instead, he attacked the non-expert opinion testimony of the police officers who were legitimately unhappy with the pictures that Mr. Garza had in his possession. And the trial judge also was, you know, child pornography is not pleasant, but nonetheless, the lawyer should have, and this is not whether or not he was ineffective, it's only whether this exchange between Mr. Garza's complaints about all of this information and evidence that was available to the lawyer, and then the lawyer's performance to not present any evidence at all, and the exchange between the trial court and the lawyer that the lawyer did not conduct an investigation, that was sufficient to trigger a crankle inquiry, and that's not what happened. And so that's what argument is, just that a crankle inquiry was necessary based on the information in Mr. Garza's long allocution. Secondly, as to the amendment to the child pornography statute, the legislature needed to clarify the statute because it was ambiguous. And where a statute is ambiguous, it is to be construed in favor of the defendant. The rule of lenity applies. Mr. Garza was convicted and sentenced prior to the amendment which clarified the ambiguous statute. It is not enough to say that now the statute is very clear. At the time of Mr. Garza's conviction and sentencing, it was not clear, and therefore his extraneous extra convictions should be vacated. Thank you. Thank you very much. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess until 9 o'clock tomorrow morning.